**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
          bscott@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISABELLA BATISTA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IRWIN NATURALS,<br><br>Defendant. | Case No. 2:20-cv-10737-DMG<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Isabella Batista ("Plaintiff") brings this action on behalf of themselves and all others similarly situated Defendant Irwin Naturals ("Defendant").

## NATURE OF THE ACTION

1.      This is a class action suit brought against Irwin Naturals arising out of Defendant's false advertising of its Ginkgo Smart Products ("Ginkgo Smart" or "Products").

2.      Defendant represents that the primary active ingredient in Ginkgo Smart is ginkgo biloba extract.

3.      Defendant's marketing of Ginkgo Smart focuses on ginkgo biloba's role as a memory or focus aid.  This extends from the product's name, "Ginkgo Smart," to the labeling claims.  For example, the labeling emphasizes that Ginkgo provides "Enhanced Memory" and that "Ginkgo Biloba is one of the very best botanicals for the brain.  Studies show that Ginkgo extracts can enhance blood flow to the brain, improve cognitive function and enhance memory."

4.      Defendant claims that Ginkgo Smart will provide actual, meaningful, and significant benefits for the memory, concentration, mental sharpness of all consumers who ingest the Products.  These advertising claims are false, misleading, and reasonably likely to deceive the public.  The purported cognitive health benefits of Gingko Smart and ginkgo biloba are the only reason a consumer would purchase the Products, and had Plaintiff and putative class members known the truth about the Products' effectiveness, they would not have purchased Ginkgo Smart.

5.      Defendant distributes, markets, and sells Ginkgo Smart.  Through an extensive and widespread nationwide marketing campaign, Defendant makes claims that Ginkgo Smart, a ginkgo biloba-based herbal supplement, provides an appreciable benefit for improving memory and concentration for all consumers who ingest the Products.  Defendant represents that ginkgo biloba extract and powder, provides these significant cognitive benefits.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 2:20-CV-10737-DMG

1

6.    The product packaging for the Ginkgo Smart represents that Ginkgo Smart will provide "Maximum Focus & Memory" and is a "Powerful Brain Booster for Memory & Mental Clarity:"



7.    Defendant communicates the same substantive message throughout its advertising and marketing for the Ginkgo Smart Products, including at point of sale, on the front of the Ginkgo Smart Products packaging.  The Product labels claim that Ginkgo Smart will provide improved cognitive acuity through memory and concentration benefits that are clinically meaningful.

8.    Each consumer who has purchased Ginkgo Smart has been exposed to Defendant's misleading advertising.  For example, the front panel of the Ginkgo Smart label states in all capital letters that the product will provide "MAXIMUM FOCUS & MEMORY" and will serve as "Powerful Brain Boosters for Memory & Mental Clarity."  Similarly, the side panels of the Ginkgo Smart labeling repeat and reinforce the false and deceptive cognitive claims.  The cognitive claims are material to consumers, who purchase Ginkgo Smart to obtain the advertised cognitive benefits, which Ginkgo Smart cannot provide.

9.    All available, reliable, scientific evidence demonstrates that Ginkgo Smart has no efficacy, is ineffective in the improvement of cognitive health, and

provides no benefits related to increasing the memory or concentration of consumers' brains. Numerous scientific studies, performed by independent researchers and published in reputable medical journals, have been conducted on ginkgo biloba, and they have universally demonstrated that ginkgo biloba does not improve cognitive function, and is not effective in the treatment or improvement of memory or concentration.

10.    Indeed, the National Center for Complementary and Integrative Health advises that there is no conclusive evidence that ginkgo is beneficial for *any* health condition.

11.    As a result of the express and implied misleading cognitive benefits message conveyed its marketing campaign, Defendant has caused Plaintiff and consumers to purchase a product which does not, and cannot, perform as represented. Plaintiff and other similarly situated consumers have been harmed in the amount they paid for the Ginkgo Smart.

## PARTIES

12.    Plaintiff Isabella Batista is a citizen of New York who resides in Ravena, New York. In June 2019, Plaintiff purchased Defendant's Ginkgo Smart Products from CVS in Glenmont, New York. Before purchasing Ginkgo Smart Plaintiff reviewed information about the Product, including the representation that the Product would provide "Maximum Focus & Memory," and would work as a "Booster[] for Memory & Mental Clarity." When purchasing Ginkgo Smart, Plaintiff also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and warranties by Defendant that the Ginkgo Smart would improve her memory and focus. Following her purchase, Plaintiff took Ginkgo Smart supplements approximately one to two times a week.

13.    Plaintiff relied on Defendant's representations and warranties in deciding to purchase Ginkgo Smart over comparable products. Accordingly, these

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 2:20-CV-10737-DMG

3

representations and warranties were part of the basis of the bargain, in that she would not have purchased Ginkgo Smart on the same terms had she known Defendant's representations were not true.

14.    Plaintiff remains interested in purchasing memory aid products and would consider Ginkgo Smart in the future if the products actually improved memory and focus.

15.    In making her purchases, Plaintiff paid a substantial price premium due to the false and misleading claims concerning Ginkgo Smart's memory and focus benefits (the "Cognitive Claims").  However, Plaintiff did not receive the benefit of her bargain, because Defendant's Product cannot improve memory or focus. Plaintiff also understood that in making her purchase, that the retailer selling her the Product was acting with the knowledge and approval of Defendant and/or as the agent of Defendant.  Plaintiff further understood that each purchase involved a direct transaction between herself and Defendant, because her Product came with packaging, labeling, and other materials prepared by Defendant, including representations and warranties regarding the Cognitive Claims.

16.    Defendant Irwin Naturals is a Nevada corporation that at all material times maintained its principal place of business in Los Angeles, California, where it has been registered to do business since 2002.  Defendant manufactures, sells, and nationally distributes Ginkgo Smart.  Defendant manufactured, marketed, and sold Ginkgo Smart during the relevant Class period.  The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or business operations concerning the Ginkgo Smart and the Memory Claims was primarily carried out at Defendant's headquarters and facilities within California, as is most, or all, of Ginkgo Smart's manufacturing.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and a least one member of the proposed class is a citizen of a state different from Defendant.

18.     This Court has personal jurisdiction over Defendant because it has continuous and systematic contacts with the State of California as to essentially render it "at home" in this State, and Defendant's principal places of business is located in this State.  Moreover, Defendant has purposefully availed themselves of the laws and benefits of doing business in this State, and Plaintiff's claims arise out of the Defendant's forum-related activities.

## FACTUAL ALLEGATIONS

19.     Ginkgo Smart is sold at a variety of retail chains, including CVS Pharmacy, Walgreens, The Vitamin Shoppe, and Bed Bath & Beyond, as well as many online retailers.

20.     Defendant claims through its marketing, advertising, and product labeling that "Ginkgo Biloba is one of the very best botanicals for the brain," and "can enhance blood flow to the brain, improve cognitive function, and enhance memory."  The Ginkgo Smart label also states that "[t]he Ginkgo extract used in this formula is standardized to contain 24% flavone glycosides and 6% terpene lactones for optimum potency."

21.     Ginkgo biloba is one of the oldest living tree species.  Ginkgo biloba extract, like that found in Ginkgo Smart, is made from the dried green leaves of the ginkgo tree.

22.     Ginkgo biloba is marketed as a dietary supplement, thereby escaping the United States Food and Drug Administration's ("FDA") requirement for

manufacturers to test the effectiveness of their products prior to their marketing and sale.

23.     On information and belief, Defendant's market research shows that the number one reason consumers use ginkgo biloba products is for brain health, specifically for memory and mental focus.

24.     Through its advertising and labeling, Defendant has consistently claimed that consuming Ginkgo Smart will meaningfully improve cognitive health. That is not true.

25.     Scientific evidence demonstrates that use of ginkgo biloba does not provide the cognitive benefits represented by Defendant.  Defendant's advertising and labeling claims are therefore false and misleading.

26.     Defendant intends that consumers will read and rely on the Cognitive Claims made in Defendant's advertising and labeling, and Plaintiff and putative class members did read and rely on those claims to their detriment.

27.     The front panel of Ginkgo Smart packaging and labeling states in capital letters, printed in large font, that Ginkgo Smart is for "MAXIMUM FOCUS & MEMORY" and is a "Powerful Brain Booster for Memory & Mental Clarity:"



28.    The side panel promises that Ginkgo Smart is "specially formulated to help you maintain your mental edge," and that "Ginkgo extracts can enhance blood flow to the brain, improve cognitive function and enhance memory:"



29.    Defendant's marketing representations in other media repeat and reinforce the false and misleading cognitive benefit claims made on the packaging and labeling for Ginkgo Smart.  For example, on Defendant's website irwinnaturals.com, Defendant repeat the false and misleading Cognitive Claims at issue.  Defendant's website claims "Ginkgo Smart Maximum Focus & Memory* supplement is specially formulated to help you maintain your mental edge[,]" and "Enhanced Memory: Ginkgo Biloba is one of the very best botanicals for the brain. Studies show that Ginkgo extracts can enhance blood flow to the brain, improve cognitive function and enhance memory."

30.    Despite Defendant's representations, Ginkgo Smart  – and ginkgo biloba – do not provide the promised benefits.  Numerous unbiased, randomized, double blind clinical human studies have confirmed that ginkgo biloba does not protect against cognitive decline or otherwise improve an individual's cognitive abilities or brain function.  Despite scientific evidence demonstrating that ginkgo

biloba does not provide the advertised benefits, Defendant continues to advertise that it does, leading Plaintiff and other consumers to believe that Ginkgo Smart actually provides the promised cognitive benefits.

31. In 2009, the Journal of the American Medical Association ("JAMA") in 2009 published a study entitled *Ginkgo biloba for preventing cognitive decline in older adults: a randomized trial*, 302(24) JAMA 2663-2670 (2009) (the "Ginko Evaluation of Memory or "GEM Study").  This study is the largest clinical study to date testing the effectiveness of ginkgo biloba to improve cognitive health and brain function.  It was designed and funded the National Center for Complementary and Alternative Medicine (today, the National Center for Complementary and Integrative Health) ("NCCIH"), the federal government's lead agency for scientific research on complementary and integrative health practices.  The NCIIH also assisted with the analysis and interpretation of the data and the preparation and approval of the GEM Study manuscript.  The GEM Study was conducted over a span of eight years and included 3,069 participants, aged 72-96 years, who did not have dementia. Participants were randomized to twice-daily doses of 120 mg of a ginkgo biloba supplement supplied by  Schwabe Pharmaceuticals (EGb 761) or an identical appearing placebo for an average duration of 6.1 years.  The authors of the GEM Study concluded that consumption of 240 mg daily of ginkgo biloba extract does not result in less cognitive decline either on a global cognitive score basis or in terms of any individual cognitive domains, including memory and attention, than placebo. There were no differences in results by age, sex, race, education, or baseline cognitive status.

32. In 2002, JAMA published a study by Solomon *et al.* entitled *Ginkgo for memory enhancement: a randomized controlled trial* 288(7) JAMA 835-840 (2002), in which 203 participants, over the age of 60 and in generally good health, were evaluated for six week periods, with half receiving 120 mg of ginkgo and the other half a placebo control.  Dr. Solomon and his co-authors concluded that ginkgo biloba

did not improve performance on standard neuropsychological tests that evaluated learning, memory, attention, and concentration.  There was no improvement on naming and verbal fluency.  There was no difference from the control group for those consuming ginkgo biloba on self-reported memory function or on global rating by spouses, friends, and relatives.  According to Solomon *et al.*, the "data suggest[s] that when taken following the manufacturer's instructions, ginkgo provides no measurable benefit in memory or related cognitive function to adults with healthy cognitive function."  Furthermore, the study authors also concluded that "[d]espite the manufacturer's claims of improved memory in healthy adults, we were unable to identify any well-controlled studies that document this claim."

33.    A similar study, entitled *Safety and efficacy of a Ginkgo biloba-containing dietary supplement on cognitive function, quality of life, and platelet function in healthy, cognitively intact older adults*, 107(3) J Am Diet Assoc 422-32 (2007) shared these findings.  Carlson *et al.*, performed a randomized, double-blind, placebo-controlled study involving 90 healthy, older adults (65-84 years old) who were randomly assigned to placebo or 160 mg ginkgo biloba from Schwabe (EGb 761) daily for four months.  After four months of consuming either placebo or ginkgo, the subjects were analyzed for cognitive and quality of life improvements. Using six standardized tests for cognitive function, including tests analyzing memory, attention, and concentration, the researchers found that consuming ginkgo was not effective versus placebo based on any of the cognitive function tests.  In fact, consuming placebo was found more effective than ginkgo biloba for one of the cognitive function tests, which was designed to measure delayed memory. Consumption of ginkgo also did not result in improvement of quality of life measures over placebo. The authors concluded their data demonstrated a "lack of an effect" and did "not support the use of a commercial ginkgo biloba-containing supplement to improve cognitive function or quality of life in healthy 65- to 85-

year-old cognitively intact healthy adults with average to above-average cognitive function."

34.    Nathan *et al.* (2002), *The acute nootropic effects of Ginkgo biloba in healthy older human subjects: a preliminary investigation*, 17(1) Hum Psychopharmacol, 45-49 (2002), also demonstrates that consumption of ginkgo biloba does not result in improvements of cognitive function, including memory or concentration.  Nathan *et al.* performed a double-blind, placebo-controlled trial involving eleven healthy adults aged 50-72 who consumed 120 mg ginkgo biloba and placebo at different times and separated by a washout period.  The researchers analyzed the acute cognitive effects of ginkgo biloba and placebo consumption using multiple memory tests.  The researchers concluded that consumption of ginkgo did not improve cognitive function as measured by any memory test: "The data revealed no evidence of acute effects of Ginkgo biloba on cognitive functioning.  The repeated measures ANOVA showed no significant drug interactions for either the accuracy (%), response speed (ms) measure of spatial working memory, numeric working memory, picture recognition, choice reaction time or simple reaction time.  Similarly no significant drug interactions were found for the auditory verbal learning tests of verbal learning and short and long-term memory."

35.    Canter and Ernst (2002), *Ginkgo biloba: a smart drug? A systematic review of controlled trials of the cognitive effects of ginkgo biloba extracts in healthy people*, 36(3) Psychopharmacol Bull 108-23 (2002) shared a similar sentiment.  The review was based on an analysis of all controlled clinical trials of ginkgo biloba for cognitive function in healthy subjects with a mean age less than 60 years and published up to November 2001.  Based on their review, which included nine clinical studies, Drs. Canter and Ernst concluded "these studies indicate no marked or consistent positive effects of Ginkgo biloba on any particular objective measure of cognitive function."

36.     In 2007, Canter and Ernst conducted a sequel systematic review of their 2002 study, analyzing all randomized, placebo-controlled clinical trials of ginkgo biloba for cognitive function carried out in healthy subjects less than 60 years of age. *See* Canter and Ernst (2007), *Ginkgo biloba is not a smart drug: an updated systematic review of randomized clinical trials testing the nootropic effects of G. biloba extracts in healthy people*, 22(5) Hum Psychopharmacology. 265-278 (2007). Their clinical study search identified 43 potentially relevant articles from six databases.  After excluding 9 randomized, controlled trials previously analyzed in their 2002 systematic review, Drs. Canter and Ernst reviewed the resulting 15 relevant clinical trials.  Noting that "[t]he negative conclusions drawn in [their] original [2002] review are strengthened by the results of the newly added studies," the 2007 study analysis concluded that evidence from clinical trials "provides no convincing evidence that [ginkgo] biloba extracts ingested either as a single dose or over a longer period has a positive effect on any aspect of cognitive performance in healthy people under the age of 60 years."

37.     A 2012 meta-analysis published in Human Psychopharmacology: Clinical and Experimental, Laws *et al.* reported on the search of numerous databases and recent qualitative reviews for randomized controlled trials examining the effects of ginkgo biloba on cognitive function (memory, executive function, and attention) in healthy people across all age groups.  *See Is Ginkgo biloba a cognitive enhancer in healthy individuals? A meta-analysis* 27(6) Human Psychopharmacology 527-533 (2012).  The study's authors, Dr. Laws and his co-researchers, who based their review and meta-analysis on thirteen clinical studies that collectively involved over 2,500 healthy individuals, concluded that ginkgo biloba had no ascertainable positive effects on the abovementioned cognitive functions in healthy individuals.  The randomized, controlled trials included in the meta-analysis included: Burns *et al.* (2006), Carlson *et al.* (2007), Cieza *et al.* (2003), Elsabagh *et al.* (2005a), Elsabagh *et al.* (2005b), Hartley *et al.* (2003), Mix and Crews (2000), Moulton *et al.* (2001),

and Solomon *et al.* (2002).  According to the researchers, and based on their scientific analysis of thirteen randomized, controlled trials, "[t]he key findings from this meta-analysis are that [*ginkgo*] *biloba* has no significant impact on memory, executive function or attention with all effect sizes non-significant and effectively at zero … Indeed, none of the 13 studies assessing memory revealed an overall significant effect size."  Citing Canter and Ernst (2007), discussed above, Laws *et al.* noted their conclusion was in "accord[] with the conclusions of previous systematic qualitative reviews."  The authors also noted that they contrasted the results of the clinical studies analyzing memory and attention involving ginkgo biloba formulations from Schwabe (EGb 761) and the LI 1370 formulation "to show these did not differ significantly."

38.    Similarly, in a 2009 study performed in connection with the internationally prestigious Cochrane Collaboration and entitled *Ginkgo biloba for cognitive impairment and dementia*, researchers reviewed 36 trials, nine of which were six months long (2016 participants total).  *See Birks and Grimley, Ginkgo biloba for cognitive impairment and dementia*, (1) Cochrane Database Syst. Rev. Art. No. : CD003120 (2009).  Most trials reviewed tested the same ginkgo biloba preparation used by Schwabe (EGb761).  According to the study authors, in the more recent and more reliable trials, three out of four found no benefits for cognitive decline.  The researchers concluded that evidence that ginkgo biloba has predictable and clinically significant benefit for people with dementia or cognitive impairment is inconsistent and unreliable.

39.    Vellas *et al.* (2012) presents the results from a randomized, doubleblind, placebo-controlled clinical trial known as the "GuidAge Study."  *See* Vellas *et al., Long-term use of standardised ginkgo biloba extract for the prevention of Alzheimer's disease: a randomised placebo-controlled trial*, 11(10) Lancet Neurol 851-859 (2012).  The authors of the GuidAge Study analyzed 2,854 participants aged 70 or older who had reported memory complaints to their primary care physicians.

The study subjects were randomly allocated to groups receiving either a twice daily dose of 120 mg of ginkgo biloba or placebo for a five-year period, and underwent annual cognitive assessments.  The study authors concluded that long-term use of ginkgo biloba does not reduce the risk of progression of Alzheimer's disease.

40.    Franke *et al.* (2014), examined the evidence from randomized placebo-controlled trials testing the cognitive enhancement effects, including attention, concentration and memory by healthy subjects, from various substances, including ginkgo biloba.  *See Substances used and prevalence rates of pharmacological cognitive enhancement among healthy subjects*, 264 Suppl 1, Eur. Arch Psychiatry Clin. Neurosci. 83-90 (Nov. 2014).  Franke *et al.*, concluded that ginkgo biloba does not provide cognitive health benefits for healthy persons:

> With respect to healthy subjects, large RCTs and meta-analyses have shown that Ginkgo biloba has no cognitively enhancing effects neither in younger nor in older healthy subjects: There are no positive effects on vigilance, attention, reaction time or higher cognitive functioning such as memory, no matter which amount of Ginkgo was used or how frequently.

## CLASS ALLEGATIONS

41.    Plaintiff seeks to represent a class defined as all persons in the United States who purchased Ginkgo Smart (the "Class").  Excluded from the Class are Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators, and anyone who purchased the Products for resale.  Also excluded is any judicial officer presiding over this matter and the member of their immediate families and judicial staff.

42.    Plaintiff also seeks to represent a subclass of all Class Members who purchased Ginkgo Smart in the State of New York (the "New York Subclass").

43.    Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the millions.  The precise number of Class Members and their identities are unknown

to Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and the sales records of retailers.

44.    Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

    a. Whether the marketing labeling and advertisements for the Products included false and/or misleading statements;

    b. Whether Defendant's conduct violated New York's General Business Laws §§ 349 and 450; and

    c. Whether Defendant has committed other tortious acts as described herein.

45.    The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff purchased Ginkgo Smart in reliance on the representations and warranties described above and suffered a loss as a result of that purchase.

46.    Plaintiff is an adequate representative of the Class and Subclass because her interests do not conflict with the interests of the Class and Subclass Members she seek to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class Members will be fairly and adequately protected by Plaintiff and her counsel.

47.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action

device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

48.     Plaintiff bring all claims in this action individually and on behalf of members of the Class and Subclass against Defendant.

## COUNT I
### (Breach Of Express Warranty)

49.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

50.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and the New York Subclass against Defendant.

51.     As the designer, manufacturer, marketer, distributor, and/or seller, Defendant expressly warranted that the Ginkgo Smart would provide "Maximum Focus & Memory" and is a "Powerful Brain Booster for Memory & Mental Clarity."

52.     However, clinical studies show that Ginkgo Biloba cannot provide any appreciable cognitive benefit to consumers. Ginkgo Smart therefore cannot provide "Maximum Focus & Memory" and is not a "Powerful Brain Booster for Memory & Mental Clarity" as Defendant claims.

53.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class Members have been injured and harmed because: (a) they would not have purchased the Ginkgo Smart on the same terms if the true facts were known about the product; (b) they paid a price premium for the Ginkgo Smart due to Defendant's promises that it would improve focus and memory; and (c) Ginkgo Smart did not have the characteristics as promised by Defendant.

54.     On or about September 23, 2020, prior to filing this action a pre-suit notice letter was served on Defendant which complied in all respects with U.C.C. §

2-607.  Plaintiff and the Class sent Defendant a letter via certified mail, return receipt requested, advising Defendant that it breached numerous warranties and violated state consumer protection laws, and demanding that Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiff's letter is attached hereto as **Exhibit A**.

### COUNT II
**(Unjust Enrichment)**

55.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

56.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and the New York Subclass against Defendant.

57.    Plaintiff and Class Members conferred benefits on Defendant by purchasing Ginkgo Smart.

58.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of Ginkgo Smart.  Retention of those monies under these circumstances is unjust and inequitable because Defendant misrepresented that Ginkgo Smart would provide cognitive benefits such as "Maximum Focus & Memory."  This misrepresentation caused injuries to Plaintiff and Class Members, because they would not have purchased Ginkgo Smart if the true facts regarding the effectiveness of the Product were known.

59.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class Members for its unjust enrichment, as ordered by the Court.

### COUNT III
**(Violation of New York's General Business Law § 349)**

59.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

---

FIRST AMENDED CLASS ACTION COMPLAINT                    16
CASE NO. 2:20-CV-10737-DMG

60.     Plaintiff brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

61.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

62.     In their sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

63.     Plaintiff and members of the New York Subclass are consumers who purchased products from Defendant for their personal use.

64.     By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that Ginkgo Smart would provide cognitive benefits.

65.     The foregoing deceptive acts and practices were directed at consumers.

66.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of Ginkgo Smart to induce consumers to purchase same.

67.     By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

68.     Defendant's action is the direct, foreseeable, and proximate cause of the damages that Plaintiff and members of the New York Subclass have sustained from having paid for and used Defendant's products.

69.     As a result of Defendant's violations, Plaintiff and members of the New York Subclass have suffered damages because:  (a) they would not have purchased Ginkgo Smart on the same terms if the true facts were known about the Product; (b) they paid a price premium for Ginkgo Smart due to Defendant's promises that it would improve focus and memory; and (c) Ginkgo Smart did not have the characteristics promised by Defendant.

70.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT IV
### (Violation of New York's General Business Law § 350)

71.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

72.     Plaintiff brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

73.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

74.     Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

75.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

76.     Defendant's false, misleading, and deceptive statements and representations of fact were and are directed to consumers.

77.     Defendant's false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

78.     Defendant's false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

79.     As a result of Defendant's false, misleading, and deceptive statements and representation of fact, Plaintiff and the New York Subclass have suffered and continue to suffer economic injury.

1    80.    As a result of Defendant's violations, Plaintiff and members of the New

2    York Subclass have suffered damages due to said violation because:  (a) they would

3    not have purchased Ginkgo Smart on the same terms if the true facts were known

4    about the product; (b) they paid a price premium for Ginkgo Smart due to

5    Defendant's promises that it would improve focus and memory; and (c) Ginkgo

6    Smart did not have the characteristics promised by Defendant.

7    81.    On behalf of herself and other members of the New York Subclass,

8    Plaintiff seeks to recover her actual damages or five hundred dollars, whichever is

9    greater, three times actual damages, and reasonable attorneys' fees.

10    **<u>PRAYER FOR RELIEF</u>**

11    WHEREFORE, Plaintiff, individually and on behalf of all others similarly

12    situated, seek judgment against Defendant, as follows:

13    a.    For an order certifying the nationwide Class and the New
       York Subclass under Rule 23 of the Federal Rules of Civil
14       Procedure and naming Plaintiff as representative of the
15       Class and the New York Subclass, and appointing
       Plaintiff's attorneys as Class Counsel to represent the Class
16       and New York Subclass Members;

17    b.    For an order declaring the Defendant's conduct violates the
18       statutes referenced herein;

19    c.    For an order finding in favor of Plaintiff, the Class, and the
20       Subclasses on all counts asserted herein;

21    d.    For compensatory and punitive damages in amounts to be
       determined by the Court and/or jury;

22    e.    For prejudgment interest on all amounts awarded;

23    f.    For an order of restitution and all other forms of equitable
24       monetary relief;

25    g.    For an order awarding Plaintiff and the Class and Subclass
       their reasonable attorneys' fees and expenses and costs of
26       suit;

27    h.    For injunctive relief as pleaded or as the Court may deem
       proper;

28

---

FIRST AMENDED CLASS ACTION COMPLAINT                                    19
CASE NO. 2:20-CV-10737-DMG

i.     Damages, restitution, and/or disgorgement in an amount to be determined at trial; and

j.     For such other and further relief as the Court may deem proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated:   January 29, 2021       Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   _/s/ Brittany S. Scott_
        Brittany S. Scott

L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        bscott@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264913)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com

_Attorneys for Plaintiff_

**EXHIBIT A**

# BURSOR & FISHER
### P.A.

**701 BRICKELL AVENUE**
**SUITE 1420**
**MIAMI, FL 33131**
**www.bursor.com**

**SARAH N. WESTCOT**
Tel: **305.330.5512**
Fax: **925.407.2700**
swestcot@bursor.com

September 23, 2020

*Via Certified Mail - Return Receipt Requested*

Irwin Naturals
c/o Klee Irwin
5310 Beethoven St.
Los Angeles, CA 90066

> *Re: Litigation Demand Letter and Request for Litigation Hold; Prompt Action Required*

To Whom It May Concern,

This letter serves as a preliminary notice and demand for corrective action by Irwin Naturals ("You") pursuant to U.C.C. § 2-607(3)(a) concerning breaches of express and implied warranties on behalf of our client Isabella Batista and a class of all similarly situated purchasers (the "Class") of Irwin Naturals Ginkgo Smart Memory Supplements (the "Product" or "Ginkgo Smart"). This letter also serves as notice of violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.; New York General Business Law §§ 349-50; and all other applicable federal and state laws. This letter provides statutory notice of our intent to file a class action lawsuit.

You have participated in the marketing and sale Ginkgo Smart Memory Supplements. The labeling and advertisements for the Product claim that the Product provides "Maximum Focus & Memory" and that Ginkgo Smart is a "Powerful Brain Booster for Memory & Mental Clarity." However, studies show that Ginkgo Bilboa does not improve memory or focus. The Product is therefore ineffective and does not increase focus or memory as promised.

Ms. Batista purchased the Product, which you repeatedly misrepresented and warranted would improve memory and focus. She understood this to mean the Product would increase her memory and focus. However, the Product could not do so because studies show that Ginkgo Bilboa does not improve memory or focus. Therefore contrary to Your express representations, the Product cannot provide the memory benefits promised. Accordingly, You violated the New York GBL and breached express and implied warranties made to our client and the Class. *See* U.C.C. §§ 2-313, 2-314, 2-607; 15 U.S.C. §§ 2301, *et seq*.; New York General Business Law §§ 349-50. Ms. Batista and other similarly situated consumers were injured and damaged by purchasing the Product. Ms. Batista would not have purchased the Product had she known that it in fact did not provide any improvement of memory or focus.

**BURSOR&FISHER**
P.A.

Ms. Batista is acting on behalf of a Class consisting of all persons in the United States who, within the relevant statute of limitations period, purchased Ginkgo Smart, and a Subclass defined as all members of the Class who purchased Ginkgo Smart in New York.

To cure the defects described above, we demand that You (1) cease and desist from further sales of Ginkgo Smart, (2) issue an immediate recall of Ginkgo Smart; and (3) make full restitution to all purchasers of Ginkgo Smart of all purchase money obtained from sales thereof.

We further demand that You immediately place a litigation hold on all relevant documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the development and/or testing of Ginkgo Smart;

2. All documents concerning the advertisement, marketing or sale of Ginkgo Smart;

3. All documents concerning communications with any individual involved in the marketing or sale of Ginkgo Smart;

4. All documents concerning communications with purchasers of Ginkgo Smart;

5. All documents concerning agreements related to the marketing, promotion or sale of Ginkgo Smart;

7. All documents concerning the sales volumes of Ginkgo Smart (in units and/or dollars), and the revenues derived therefrom; and

8. All documents concerning the identities of Class members who purchased Ginkgo Smart.

We are willing to negotiate to attempt to resolve the demands asserted in this letter. If You wish to enter into such discussions, please contact me immediately. If I do not hear from You promptly, I will conclude that You are not interested in resolving this dispute short of litigation. If You contend that any statement in this letter is inaccurate in any respect, please provide us with Your contentions and supporting documents promptly.

Very truly yours,

*Sarah N. Westcot*

Sarah N. Westcot